**No. 25-40379**

# In the United States Court of Appeals for the Fifth Circuit

**United States of America**,
Plaintiff - Appellee,

v.

**Damilola Kumapayi**,
Defendant - Appellant.

On Appeal from the United States District Court
for the Eastern District of Texas,
Sherman Division,
USDC No. 4:21-CR-00253-8

## OPENING BRIEF OF APPELLANT DAMILOLA KUMAPAYI

**Kambira Jones Morgan**
The Jones Legal Defense Group, PLLC
2201 Main Street, Suite 800
Dallas, TX 75201
Telephone: (972) 525-7416
**Counsel for Appellant**

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies the following persons and entities, as described in 5th Cir. R. 28.2.1, have an interest in the outcome of this case. These representations are made so the Judges of this Court may evaluate possible disqualification or recusal.

**District Court Judges and Magistrate Judges**

- Hon. Amos L Mazzant (Chief U.S. District Judge)
- Hon. Christine A. Nowak (U.S. Magistrate Judge)
- Hon. Kimberly C Priest Johnson (U.S. Magistrate Judge)

**Defendant - Appellant**

- Damilola Kumapayi

**Counsel for Defendant - Appellant (district court and on appeal)**

- Kambira Jones Morgan (The Jones Legal Defense Group, PLLC, Dallas, TX)

**Plaintiff - Appellee**

- United States of America

**Counsel for Plaintiff - Appellee (district court and on appeal)**

- Jay R. Combs (Acting U.S. Attorney, E.D. Tex.)
- Marisa J. Miller (AUSA, Plano Office, E.D. Tex.)
- Heather Harris Rattan (AUSA, Plano Office, E.D. Tex.)
- Anand Varadarajan (AUSA, Plano Office, E.D. Tex.)
- Robert Austin Wells (AUSA, Tyler Office, E.D. Tex.)

*/s/ Kambira Jones Morgan*
*Counsel for Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Damilola Kumapayi respectfully requests oral argument. This appeal presents substantial questions concerning the enforceability and scope of the appellate waiver, compliance with Federal Rule of Criminal Procedure 32's disclosure and dispute-resolution requirements, and the legality of the restitution order under the Mandatory Victims Restitution Act. The record reflects disputed loss calculations, late-disclosed sentencing materials, and the wholesale adoption of contested PSR findings. Oral argument would assist the Court in addressing these interrelated procedural and statutory issues and their impact on the advisory Guidelines range and restitution determination.

# TABLE OF CONTENTS

**CONTENTS** **PAGES**

CERTIFICATE OF INTERESTED PERSONS ..................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ......................................................................... iv

TABLE OF AUTHORITIES ..................................................................... vi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE ............................................................... 4

SUMMARY OF THE ARGUMENT ....................................................... 9

ARGUMENT ........................................................................................ 12

I. The Appellate Waiver Is Unenforceable and Does Not Bar Review of the Sentencing Errors Presented. ........................... 12

II. The District Court Abused Its Discretion by Denying an Emergency Continuance After the Government's Late Disclosure of Sentencing Materials........................................ 19

III. The District Court Violated Rule 32 and Due Process by Sentencing Mr. Kumapayi on Undisclosed, Late-Disclosed, Revised, and Unreliable Materials Without Ensuring a Meaningful Opportunity to Rebut.......................................... 25

IV. The District Court Procedurally Erred by Applying Multiple Enhancements Without Resolving Material Objections or Making Individualized Findings. ....................................... 36

V. The Restitution Order Violates the Mandatory Victims Restitution Act and 18 U.S.C. § 3664. .................................. 58

CONCLUSION ..................................................................................... 65

CERTIFICATE OF SERVICE ............................................................... 66

CERTIFICATE OF COMPLIANCE ....................................................... 67

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*,
552 U.S. 38 (2007) .......... 36, 54, 57

*Molina-Martinez v. United States*,
578 U.S. 189 (2016) .......... 17, 33, 55, 56, 57

*Stinson v. United States*,
508 U.S. 36 (1993) .......... 48

*Ungar v. Sarafite*,
376 U.S. 575 (1964) .......... 19

*United States v. Arledge*,
553 F.3d 881 (5th Cir. 2008) .......... 61

*United States v. Barnes*,
953 F.3d 383 (5th Cir. 2020) .......... 16

*United States v. Baty*,
980 F.2d 977 (5th Cir. 1992) .......... 12, 14

*United States v. Beydoun*,
469 F.3d 102 (5th Cir. 2006) .......... 58, 61, 62

*United States v. Carreon*,
11 F.3d 1225 (5th Cir. 1994) .......... 25, 26, 31, 34, 38, 39, 45

*United States v. Chaney*,
120 F.4th 1300 (5th Cir. 2024) .......... 12

*United States v. Cisneros-Gutierrez*,
517 F.3d 751 (5th Cir. 2008) .......... 38

*United States v. German*,
486 F.3d 849 (5th Cir. 2007) .......... 19

*United States v. Gomez-Valle*,
828 F.3d 324 (5th Cir. 2016) .................................................. 52, 53, 54

*United States v. Gonzales*,
436 F.3d 560 (5th Cir. 2006) .................................................. 38

*United States v. Harris*,
821 F.3d 589 (5th Cir. 2016) .................................................. 38, 39

*United States v. Ibarra-Luna*,
628 F.3d 712 (5th Cir. 2010) .................................................. 33, 36, 54, 56

*United States v. Inman*,
411 F.3d 591 (5th Cir. 2005) .................................................. 59, 61

*United States v. Isiwele*,
635 F.3d 196 (5th Cir. 2011) .................................................. 38

*United States v. Jacobs*,
635 F.3d 778 (5th Cir. 2011) .................................................. 12, 13, 17, 18

*United States v. Johnson*,
648 F.3d 273 (5th Cir. 2011) .................................................. 25, 26

*United States v. Jones*,
134 F.4th 831 (5th Cir. 2025) .................................................. 16

*United States v. Kasali*,
111 F.4th 637 (5th Cir. 2024) .................................................. 58

*United States v. Kim*,
988 F.3d 803 (5th Cir. 2021) .................................................. 63

*United States v. King*,
93 F.4th 845 (5th Cir. 2024) .................................................. 58

*United States v. Lucas*,
134 F.4th 810 (5th Cir. 2025) .................................................. 58, 63

*United States v. Mason*,
722 F.3d 691 (5th Cir. 2013) .......... 59, 61

*United States v. Mathew*,
916 F.3d 510 (5th Cir. 2019) .......... 58

*United States v. Ocana*,
204 F.3d 585 (5th Cir. 2000) .......... 50

*United States v. Ochoa-Gomez*,
777 F.3d 278 (5th Cir. 2015) .......... 38

*United States v. Otero*,
868 F.2d 1412 (5th Cir. 1989) .......... 27, 34

*United States v. Rodriguez*,
523 F.3d 519 (5th Cir. 2008) .......... 38

*United States v. Sanders*,
343 F.3d 511 (5th Cir. 2003) .......... 15, 36, 39, 45

*United States v. Schinnell*,
80 F.3d 1064 (5th Cir. 1996) .......... 59

*United States v. Sharma*,
703 F.3d 318 (5th Cir. 2012) .......... 58, 59, 60, 62, 63

*United States v. Townsend*,
55 F.3d 168 (5th Cir. 1995) .......... 25, 27

*United States v. Tucker*,
404 U.S. 443 (1972) .......... 25, 34

*United States v. Uptain*,
531 F.2d 1281 (5th Cir. 1976) .......... 19, 20, 21, 22, 23

*United States v. Valdez*,
726 F.3d 684 (5th Cir. 2013) .......... 38

*United States v. Victoria*,
877 F.2d 338 (5th Cir. 1989) .......... 31

*United States v. West*,
137 F.4th 395 (5th Cir. 2025) .......... 15

*United States v. Wright*,
496 F.3d 371 (5th Cir. 2007) .......... 60

*United States v. Zuniga*,
720 F.3d 587 (5th Cir. 2013) .......... 25, 34, 36, 46, 56

**STATUTES**

18 U.S.C. § 3231 .......... 1

18 U.S.C. § 3663A .......... 17, 56, 65, 67

18 U.S.C. § 3663A(a)(2) .......... 67, 68

18 U.S.C. § 3664 .......... v, 56, 65, 70, 71

18 U.S.C. § 3664(e) .......... 66, 70

18 U.S.C. § 3742(a) .......... 1

18 U.S.C. § 3742(a)(1) .......... 15

28 U.S.C. § 1291 .......... 1

**RULES**

5th Cir. R. 32.1 .......... 77

Fed. R. App. P. 32(a)(5) .......... 77

Fed. R. App. P. 32(a)(6) .......... 77

Fed. R. App. P. 32(a)(7)(B) .....77

Fed. R. App. P. 32(f) .....77

Fed. R. App. P. 4(b)(1)(A) ..... 1

Fed. R. Crim. P. 11(b)(1)(K) .....14, 16

Fed. R. Crim. P. 11(b)(1)(N) .....13, 14

Fed. R. Crim. P. 32 .....27, 38

Fed. R. Crim. P. 32(i)(1)(A) .....35

Fed. R. Crim. P. 32(i)(1)(C) .....29

Fed. R. Crim. P. 32(i)(3)(B) ..... 15, 29, 33, 35, 53, 72

**OTHER AUTHORITIES**

U.S.S.G. § 1B1.3 .....47

U.S.S.G. § 1B1.3(a)(1)(B). .....15, 37, 39

U.S.S.G. § 2B1.1 .....38, 48

U.S.S.G. § 2B1.1(b)(1) .....37

U.S.S.G. § 2B1.1(b)(10)(B) .....50

U.S.S.G. § 2B1.1(b)(2)(A) .....47

U.S.S.G. § 3A1.1 .....49

U.S.S.G. § 3A1.1(b)(1) .....45, 46

U.S.S.G. § 3B1.2 .....53

U.S.S.G. § 3B1.2(b) ........................................................................52

U.S.S.G. § 4C1.1...........................................................................48, 49

# JURISDICTIONAL STATEMENT

This appeal is from a final judgment of conviction and sentence entered in the United States District Court for the Eastern District of Texas. The district court had jurisdiction under 18 U.S.C. § 3231. The judgment was entered June 23, 2025. ROA.98-105. Mr. Kumapayi timely filed a notice of appeal under Fed. R. App. P. 4(b)(1)(A). ROA.200. This Court has jurisdiction to determine the waiver's enforceability and to review the sentence and restitution order under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

I. Whether the appellate waiver is unenforceable or inapplicable where the Rule 11 colloquy did not ensure an informed waiver, including omission of the required restitution advisement, and the sentence and restitution determination resulted from fundamental Rule 32 violations (late disclosure, reliance on co-defendant trial materials, and unexplained PSR revisions), such that the sentencing process was unlawful and outside the waiver's proper scope, and enforcement would produce a miscarriage of justice.

II. Whether the district court abused its discretion by denying an unopposed emergency motion to continue sentencing after the Government disclosed hundreds of pages of sentencing materials days, and for some portions of the Government's sentencing material only minutes, before the hearing, materially impairing the defense's ability to prepare for and respond to disputed Guidelines and restitution issues.

III. Whether the district court violated Rule 32 and due process by sentencing Mr. Kumapayi on undisclosed, late-disclosed, revised, and untested materials, including co-defendant trial testimony/exhibits not provided to the defense, summary loss spreadsheets/compilations not supported by underlying records, and post-objection PSR revisions based on unspecified "updated information," without ensuring a meaningful opportunity to rebut and without making required dispute-resolving findings.

IV. Whether the sentence is procedurally unreasonable because the district court applied and/or sustained multiple Guideline adjustments without resolving material objections or making individualized findings, including: (a) attributing conspiracy-wide intended loss without individualized scope-and-foreseeability findings under the relevant-conduct guideline; (b) applying the vulnerable-victim enhancement based on conclusory assertions and without findings of unusual vulnerability and the defendant's

knowledge; (c) applying the ten-or-more-victims enhancement without identifying which qualifying victims and actual losses were attributable to Mr. Kumapayi under relevant-conduct principles; (d) denying the zero-point-offender reduction without resolving the criminal-history dispute and explaining eligibility; (e) applying the foreign-conduct enhancement by treating foreign conduct as automatically attributable to all conspirators without scope-and-foreseeability findings; and (f) denying a minor-participant reduction without conducting the required comparative analysis or addressing the record hierarchy showing Mr. Kumapayi's subordinate role.

V. Whether the district court erred under the Mandatory Victims Restitution Act and § 3664 by imposing $4,880,453.57 in joint-and-several restitution without victim-specific proof of actual loss and proximate cause and without the required statutory findings, where the Government failed to carry its burden and the court adopted aggregate PSR totals without resolving disputed restitution issues.

# STATEMENT OF THE CASE

## I. Initial Proceedings.

On September 9, 2021, a grand jury in the Eastern District of Texas returned a multi-defendant indictment charging Damilola Kumapayi and others with conspiracy to commit wire fraud and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1349 and 1956(h). ROA.115-131. Mr. Kumapayi was arrested and made his initial appearance before Magistrate Judge Christine Nowak on September 23, 2021. ROA.174-192. He was found eligible for appointed counsel, waived his right to a detention hearing, and was detained pending further proceedings. ROA.16-18, 190-191.

On the same date, the district court entered a Rule 5(f) Brady order and a standard pretrial scheduling order. ROA.15, 19-25. CJA counsel was appointed at the outset of the case. ROA.14. In May 2022, Mr. Kumapayi moved for new counsel. ROA.26-27. Following a hearing on July 14, 2022, the district court granted the request and appointed defense counsel pursuant to the Criminal Justice Act. ROA.28, 200-202.

In August 2022, defense counsel moved to withdraw based on a potential conflict of interest. ROA.29-31. After hearing from both counsel

and the defendant, the district court denied the motion. ROA.29-32, 204-211. Superseding indictments were later issued, and the case was designated complex. ROA.5 (Complex Case Order, Dkt. 387), ROA.132-148, 149-171.

## II. Plea Proceedings & Trial of Co-Defendants.

On September 29, 2023, Mr. Kumapayi executed written plea paperwork pursuant to a plea agreement containing an appellate waiver. ROA.42-43, 482-494. On October 25, 2023, he appeared with counsel before Magistrate Judge Kimberly Priest Johnson for a change-of-plea hearing. ROA.212-238. After conducting a Rule 11 colloquy, the court found the plea knowing and voluntary and recommended its acceptance. ROA.44-45, 212-238. On November 16, 2023, Chief Judge Amos L. Mazzant, III adopted the recommendation. ROA.55-56. The district court accepted the plea on the day of sentencing on June 16, 2025. ROA.309.

Several co-defendants proceeded to trial before a jury. Mr. Kumapayi did not attend the trial and was not present for the presentation of evidence. ROA.250.

## III. Presentence Investigation Report ("PSR").

The initial Presentence Investigation Report ("PSR") was disclosed on November 1, 2024. ROA.495-523. On March 7, 2025, defense counsel filed written objections challenging, among other matters, the loss calculation, guideline enhancements, and restitution. ROA.525-536. The defense also filed a sentencing memorandum. ROA.309, 831-836.

On April 22, 2025, the probation officer issued an Addendum revising certain state loss amounts, including Nevada and Illinois, based on updated information from a case agent. The PSR does not identify the records, sources, or methodology underlying those revisions. ROA.537-571. Sentencing was set for June 16, 2025. ROA.11.

## IV. Disclosure of Sentencing Materials and Denial of Continuance.

On Friday, June 13, 2025, three days before sentencing and including the weekend, the Government uploaded 182 documents totaling approximately 481 pages to USAfx, labeled as materials related to sentencing and not previously provided to the defense. ROA.87-88, 247-248. Defense counsel filed an unopposed Emergency Motion to Continue Sentencing, explaining that the newly disclosed materials were central to Mr. Kumapayi's defense, to the objections already filed, and

necessary for cross-examination. ROA.87-88, 247-248. The district court denied the motion the same day. ROA.87-88.

## V. Sentencing and Appeal.

Sentencing proceeded on June 16, 2025. ROA.240-319. At the time of sentencing, Mr. Kumapayi was housed in an out-of-state facility in Oklahoma, as reflected in the PSR. ROA.539. Upon arriving at the courthouse shortly before the hearing, defense counsel was handed an accordion folder containing approximately 160 pages of documents. ROA.321-481. During the hearing, the Government sought admission of these exhibits (Tabs 1-5). ROA.246-249, 321-481. Defense counsel objected on timeliness grounds, explaining that she did not have sufficient time to review or analyze the materials. ROA.246-249. The objection was overruled. ROA.246-249.

Unlike the notebook containing the Government's exhibits that was provided to the district court, defense counsel's copy was not in a notebook or binder and did not contain a handwritten table of contents or handwritten notes. ROA.241, 246-249, 321-481. Defense counsel had not previously received some of this compilation and had no opportunity to review it, compare it to prior disclosures, or consult meaningfully with

Mr. Kumapayi before sentencing began, as the hearing was scheduled for 9:00 a.m. and commenced at 9:13 a.m. ROA.240.

As a result of receiving these documents within a short time frame and having no opportunity to meet with Mr. Kumapayi, defense counsel requested that the district court reconsider the prior emergency motion for continuance. The court denied the request. ROA.247-248.

In resolving disputed sentencing issues, the district court, probation, and case agents relied on testimony and exhibits from the earlier jury trial of co-defendants, even though those admitted trial materials and the full trial transcripts were not provided to the defense. ROA.249, 250, 257, 258, 288, 289, 293, 298, 302, 319. The district court overruled all objections collectively, adopted the PSR without change, and accepted the Addendum's recommendations. ROA.309. The court determined a total offense level of 30, criminal-history category I, and an advisory range of 97-121 months. ROA.309. It imposed a 109-month sentence, three years of supervised release, and restitution of $4,880,453.57, jointly and severally with co-defendants. ROA.315-316. A timely notice of appeal followed. ROA.200.

## SUMMARY OF THE ARGUMENT

This appeal concerns the integrity of the sentencing process, not routine disagreement with the advisory Guidelines.

As a threshold matter, the appellate waiver does not bar review. A waiver is enforceable only if knowing, voluntary, and applicable to a lawful sentencing process. The Rule 11 colloquy did not ensure an informed waiver, including the required restitution advisement. More fundamentally, the sentencing proceeding violated Rule 32 and due process through late disclosure of critical materials, reliance on co-defendant trial evidence never provided to the defense, unexplained post-objection revisions to loss figures, and the absence of dispute-resolving findings. A waiver cannot insulate a procedurally defective sentencing process from review. Enforcing the waiver here would shield a sentencing proceeding marked by serious procedural irregularities and result in a miscarriage of justice.

The district court further abused its discretion by denying an unopposed emergency continuance after the Government disclosed extensive sentencing materials days, and for some portions of the Government's sentencing materials only minutes, before the hearing.

Those materials directly affected loss, enhancements, and restitution exposure. Denying additional preparation time materially impaired counsel's ability to review, verify, and challenge the Government's proof.

The sentencing proceeding failed to comply with Rule 32. The court relied on undisclosed or late-disclosed materials, including testimony and exhibits from a co-defendant jury trial in which Mr. Kumapayi did not participate and whose materials were never disclosed to the defense. It adopted summary loss compilations without requiring production of underlying documentation. After objections were filed, the PSR's loss figures were revised based on unspecified "updated information," without identifying sources or methodology. The court adopted the PSR and Addendum wholesale without resolving material disputes. Rule 32 does not permit reliance on evidence that the defendant has no meaningful opportunity to rebut, nor does due process permit sentencing based on undisclosed or untestable materials.

The court also misapplied U.S.S.G. § 1B1.3 by attributing conspiracy-wide loss without making individualized findings defining the scope of Mr. Kumapayi's jointly undertaken activity or establishing foreseeability. The Guidelines do not permit wholesale adoption of

conspiracy totals based solely on membership. In addition, the court applied multiple enhancements and denied mitigating adjustments without resolving material objections or making individualized relevant-conduct findings. The victim-based enhancements, foreign-conduct enhancement, and denial of the zero-point-offender and minor-participant reductions materially increased the advisory range. Because the Guidelines range anchors the sentencing framework, these preserved errors cannot be deemed harmless.

The restitution order independently violates the MVRA. Restitution requires victim-specific proof of actual loss and proximate cause. Instead, the district court imposed $4,880,453.57 in joint-and-several restitution that mirrored aggregate conspiracy intended-loss totals without individualized findings tying specific losses to Mr. Kumapayi's conduct. Restitution is not coextensive with Guidelines loss and cannot rest on undifferentiated conspiracy-wide amounts.

Because the sentencing process departed from Rule 32, the Sentencing Guidelines, and constitutional due process, the sentence and restitution order must be vacated and the case remanded for resentencing on a fully disclosed and properly adjudicated record.

# ARGUMENT

## I. The Appellate Waiver Is Unenforceable and Does Not Bar Review of the Sentencing Errors Presented.

### A. Standard of Review.

Whether an appellate waiver bars review is a question of law reviewed *de novo*. *United States v. Jacobs*, 635 F.3d 778, 780-81 (5th Cir. 2011). A defendant may waive the statutory right to appeal, but only if "(1) the waiver was knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement." *Id.* at 781. A waiver is enforceable only to the extent the Government invokes it. *United States v. Chaney*, 120 F.4th 1300, 1302 (5th Cir. 2024).

For a waiver to be knowing and voluntary, the district court must ensure that the defendant understands the right being relinquished and the consequences of doing so. *Jacobs*, 635 F.3d at 781; Fed. R. Crim. P. 11(b)(1)(N). A waiver is not informed if the defendant does not understand the potential consequences of the decision. *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992).

Appeal waivers are interpreted according to ordinary contract principles and construed narrowly. *Jacobs*, 635 F.3d at 781. Any ambiguity is resolved in favor of the defendant's right to appeal. *Id.*

### B. The Waiver Does Not Bar Review of the Sentencing Errors Presented.

The plea agreement reflects that both sides expected the disputed sentencing issues, such as loss, enhancements, and restitution, to be litigated through ordinary adversarial procedures at sentencing. ROA.482-494. Mr. Kumapayi could not knowingly agree that appellate review would be unavailable if the sentencing record later shifted through late disclosure, materials from the co-defendants' trial, and unexplained PSR revisions. An appellate waiver presumes a lawful sentencing process; it cannot be read to authorize sentencing on undisclosed, unreliable, or untested information in violation of Rule 32.

#### 1. The Rule 11 Colloquy Did Not Ensure an Informed Waiver.

At rearraignment, the magistrate judge summarized the waiver but did not conduct an individualized inquiry sufficient to ensure that Mr. Kumapayi understood the scope and consequences of the waiver as required by Rule 11(b)(1)(N). ROA.227-228; Fed. R. Crim. P. 11(b)(1)(N).

The court also did not advise him that restitution could be imposed, as required by Rule 11(b)(1)(K). ROA.224-225; Fed. R. Crim. P. 11(b)(1)(K). A waiver is not knowing when the defendant does not understand the possible consequences of the decision. *Baty*, 980 F.2d at 979.

Nothing in the Rule 11 colloquy ensured that Mr. Kumapayi understood he was relinquishing appellate review of sentencing errors arising from noncompliance with Rule 32's disclosure and dispute-resolution requirements. The procedural breakdowns that later occurred, including late disclosure of sentencing materials (ROA.87-88, 240-249, 321-481), denial of an unopposed continuance (ROA.246-249), reliance on co-defendant trial materials (ROA.249-250, 288-289, 319), and post-objection PSR revisions without disclosed methodology (ROA.537-571), underscore that the waiver was not informed as applied.

An appeal waiver does not relieve the district court of its obligation to comply with Rule 11's procedural safeguards.

### 2. The Waiver Does Not Insulate Serious Rule 32 Errors.

Even when valid, an appeal waiver does not bar review of a sentence "imposed in violation of law." 18 U.S.C. § 3742(a)(1). Rule

32(i)(3)(B) requires the district court to rule on disputed sentencing facts or determine that a ruling is unnecessary. Fed. R. Crim. P. 32(i)(3)(B).

Here, the district court adopted the PSR wholesale despite explicit objections and without determining scope and foreseeability under § 1B1.3. The court's statement that defense counsel appeared to "misunderstand[] what happens in a conspiracy case," and its conclusion that Defendant was responsible for "all of this loss," reflects a conflation of conspiracy liability with relevant-conduct attribution. ROA.302. But § 1B1.3(a)(1)(B) requires individualized findings of scope and foreseeability. See *United States v. Sanders*, 343 F.3d 511, 527 (5th Cir. 2003); U.S.S.G. § 1B1.3(a)(1)(B).

An appeal waiver does not eliminate the district court's obligation to comply with Rule 32's mandatory procedural requirements.

#### 3. The Restitution Award Is Not Shielded by the Waiver.

Federal Rule of Criminal Procedure 11(b)(1)(K) requires the district court to advise the defendant of "the court's authority to order restitution." *See* Fed. R. Crim. P. 11(b)(1)(K). A waiver cannot bar review of restitution imposed beyond statutory limits. *United States v. West*, 137 F.4th 395, 400-401 (5th Cir. 2025).

The restitution order here mirrors the full conspiracy-wide loss figure and was imposed without individualized findings of proximate cause, victim-specific loss, or scope under 18 U.S.C. § 3663A. *See* 18 U.S.C. § 3663A. Because the restitution determination was procedurally defective and legally unsupported, it cannot be insulated by an appeal waiver. An appeal waiver does not permit enforcement of an unlawful restitution award.

#### 4. Enforcement Would Result in a Miscarriage of Justice.

Although this Court has "declined explicitly either to adopt or to reject" a miscarriage-of-justice exception, it has acknowledged that waivers do not bar review where the sentencing process itself is unlawful. *United States v. Barnes*, 953 F.3d 383, 389 (5th Cir. 2020); *Jacobs*, 635 F.3d at 781; *United States v. Jones*, 134 F.4th 831, 841 (5th Cir. 2025) ("[W]e have declined explicitly either to adopt or to reject" such an exception.[49] In avoiding recognizing the exception, we have noted that its proponents may waive the argument by failing to "(1) explain the proper scope of that exception, (2) cite any cases purporting to do so, or (3) *detail how and why it should apply to [their] case.*") (emphasis added).

In this case, the miscarriage-of-justice exception should apply because this case does not present a routine Guidelines disagreement. Rather, it presents, *inter alia*:

- late disclosure of sentencing materials (ROA.87-88, 240-249, 321-481),
- denial of a continuance preventing meaningful review (ROA.87-88, 246-249),
- reliance on co-defendant trial materials unavailable to the defense (ROA.249-250, 288-289, 319),
- revised PSR loss figures without identified sources (ROA.537-571),
- wholesale adoption of disputed figures without Rule 32 findings (ROA.91-93, 573-576), and
- restitution mirroring aggregate conspiracy totals without individualized findings (ROA.92, 98-105, 573-576).

These errors directly affected the advisory Guidelines range. Because the Guidelines serve as the "starting point and initial benchmark" for sentencing, *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016), procedural distortion of that framework is not harmless. Even under the narrowest conception of any miscarriage-of-justice

limitation, enforcement here would foreclose review of fundamental sentencing defects affecting the advisory range.

### C. The Claims Fall Outside the Waiver's Proper Scope and the Court Should Reach the Merits.

Even if otherwise enforceable, the waiver does not bar the claims presented. Mr. Kumapayi does not challenge his conviction. He challenges the legality of the sentencing process. Mr. Kumapayi's claims concern the legality of the sentence itself because they challenge the sentencing court's failure to comply with mandatory procedural and substantive requirements, and they therefore fall outside the waiver's proper reach. *Jacobs*, 635 F.3d at 781. The appeal waiver does not bar review of those fundamental sentencing errors.

### D. Requested Relief.

Because (1) the Rule 11 colloquy did not ensure an informed waiver, (2) the sentencing process violated Rule 32's mandatory safeguards, (3) enforcement would result in fundamental unfairness, and (4) the claims challenge the legality of the sentencing framework itself, the appellate waiver does not bar review. Thus, this Court should reach the merits of the sentencing errors presented.

## II. The District Court Abused Its Discretion by Denying an Emergency Continuance After the Government's Late Disclosure of Sentencing Materials.

### A. Standard of Review.

A district court's denial of a motion for continuance is reviewed for abuse of discretion. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). That discretion, however, "is not unbounded." *See United States v. Uptain*, 531 F.2d 1281, 1285-86 (5th Cir. 1976). Whether denial constitutes an abuse "must be decided on a case-by-case basis in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied." *Id.* at 1286 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

In assessing whether denial of a continuance constitutes reversible error, this Court considers several highly relevant factors, including:

- the quantum of time available for preparation;
- the likelihood of prejudice from denial;
- the accused's role, if any, in shortening preparation time;
- the degree of complexity of the case;
- the availability of discovery from the prosecution; and
- the adequacy of the defense actually provided.

*Uptain*, 531 F.2d at 1286-87. Each factor weighs decisively in favor of reversal here.

### B. The Quantum of Time Available for Preparation Was Functionally Nonexistent.

The Government disclosed 182 sentencing-related documents totaling approximately 481 pages on the Friday before a Monday sentencing. ROA.87-88; ROA.247-248. On the morning of sentencing, defense counsel was handed an additional compilation of approximately 160 pages shortly before the hearing began. ROA.321-481. Sentencing commenced at 9:13 a.m. ROA.240.

There were no intervening recesses, no extensions, and no meaningful opportunity to review the newly disclosed materials, investigate their contents, verify attribution, or consult with the client. Unlike cases where denial has been upheld because counsel had weeks to prepare, *see Uptain*, 531 F.2d at 1286-87, counsel here had the weekend and for some portions of the Government's sentencing material only minutes, making the preparation time effectively zero.

### C. The Likelihood of Prejudice Was Concrete and Outcome-Determinative.

*Uptain* directs courts to evaluate the likelihood of prejudice from denial. *Id.* This is not a case of speculative harm. Defense counsel renewed her request for a continuance on the record and explained, *inter alia*, that the materials had not been meaningfully reviewed, directly affected pending objections, and proceeding would impair the defense's ability to cross-examine the case agent. ROA.246-249.

The district court nevertheless relied on those materials in adopting loss figures and restitution totals. ROA.98-105; ROA.573-576. The prejudice was not theoretical. The materials directly drove the advisory Guidelines range and restitution award. Under *Uptain*, where denial forecloses investigation or meaningful adversarial testing, prejudice is established. 531 F.2d at 1286. That is precisely what occurred.

### D. Mr. Kumapayi Played No Role in Shortening the Preparation Time.

Another *Uptain* factor is whether the accused contributed to the need for a continuance. *Id.* Here, the time compression was entirely the product of the Government's late disclosure. ROA.87-88; ROA.247-248. The defense did not delay. To the contrary, counsel promptly filed an

unopposed emergency motion to continue. ROA.87-88. This factor weighs entirely in Mr. Kumapayi's favor.

### E. The Case Was Complex and the Late Disclosure Concerned Core Sentencing Issues.

*Uptain* emphasizes the degree of complexity as highly relevant. 531 F.2d at 1286. The district court had previously designated this matter as complex. ROA.5; ROA.132-171. The late-disclosed materials supported multistate loss totals, major § 2B1.1 enhancements, and drove restitution exposure. These were not peripheral issues. They were central sentencing determinants requiring document verification, comparison to PSR figures, and preparation for cross-examination of the case agent.

Requiring counsel to absorb and litigate hundreds of late disclosed pages bearing directly on a multi-million-dollar intended-loss enhancement within days, and for some portions of the Government's sentencing materials only minutes, conflicted with the court's own recognition of the case's complexity.

### F. The Availability and Timing of Discovery Undermined Adversarial Testing.

*Uptain* also considers the availability of discovery from the prosecution. *Id.* at 1286-87. Here, discovery was untimely. Hundreds of

pages were disclosed days before sentencing, and hundreds of pages of additional materials were delivered minutes before the hearing. ROA.87-88, 242-249, 321-481. Discovery that cannot be reviewed in time to prepare is not meaningful discovery. The late disclosure prevented verification of methodology, attribution, duplication, and underlying records.

### G. The Denial Compromised the Adequacy of the Defense Actually Provided.

Finally, *Uptain* instructs courts to consider the adequacy of the defense actually provided. 531 F.2d at 1286-87. Defense counsel could not meaningfully review the materials with her client, who was housed out of state in Oklahoma at the time of the filing of the emergency motion for continuance and sentencing. ROA.87-88, 246-249, 539. The court denied the continuance and proceeded without ensuring meaningful consultation. ROA.90. The denial forced counsel to litigate complex loss and restitution issues in real time without investigation or client input. That is precisely the type of prejudice *Uptain* warns against.

### H. This Was an Abuse of Discretion.

Each of the *Uptain* factors points in the same direction that, including no preparation time, concrete prejudice, no defense fault,

significant complexity, untimely discovery, and compromised defense adequacy, denial of a continuance exceeds permissible discretion. This was not a routine scheduling dispute. It was a sentencing proceeding conducted on late-disclosed materials central to the advisory range and restitution exposure. Denial of an unopposed emergency continuance under these circumstances constituted an abuse of discretion and violated the procedural safeguards that govern sentencing.

## I. Requested Relief.

Because the district court denied an emergency continuance despite overwhelming *Uptain* factors favoring additional preparation time, the sentence and restitution order should be vacated and the case remanded for resentencing on a properly disclosed and adequately litigated record.

## III. The District Court Violated Rule 32 and Due Process by Sentencing Mr. Kumapayi on Undisclosed, Late-Disclosed, Revised, and Unreliable Materials Without Ensuring a Meaningful Opportunity to Rebut.

### A. Standard of Review.

Whether the district court complied with Federal Rule of Criminal Procedure 32 and the Due Process Clause is reviewed *de novo*. *United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994) ; Fed. R. Crim. P. 32. Although a sentencing court may consider a broad range of information, it may rely only on information bearing sufficient indicia of reliability, and the defendant must be afforded a meaningful opportunity to rebut contested facts. *See United States v. Johnson*, 648 F.3d 273, 277-78 (5th Cir. 2011); *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013); *United States v. Tucker*, 404 U.S. 443, 447 (1972). And while a PSR is generally reliable, 'bald, conclusionary statements' are not; if the PSR's factual recitation lacks adequate indicia of reliability, it is error to rely on it at sentencing. *Zuniga*, 720 F.3d at 591.

A court commits reversible procedural error when it relies on information that was not disclosed to the defense or not subjected to adversarial testing. *See United States v. Townsend*, 55 F.3d 168, 172 (5th Cir. 1995).

### B. Rule 32 Requires Disclosure, Reliability, and Dispute-Resolving Findings.

Rule 32 imposes three independent safeguards at sentencing. First, the defendant must have access to and an opportunity to comment on the information the court intends to rely upon. Fed. R. Crim. P. 32(i)(1)(C). Second, when the defendant objects to material facts in the PSR, the court must either make specific findings resolving the dispute or determine that the disputed matter will not affect sentencing. Fed. R. Crim. P. 32(i)(3)(B); *Carreon*, 11 F.3d at 1231. Third, the sentencing determination must rest on information bearing sufficient indicia of reliability. *Johnson*, 648 F.3d at 277-78. These requirements are not technicalities. They ensure that sentencing remains an adversarial proceeding rather than a summary adoption of untested assertions. Those safeguards were not satisfied here.

#### 1. The District Court Relied on Testimony and Exhibits from a Separate Co-Defendant Trial.

In resolving disputed loss and restitution issues, the district court and the Government repeatedly referenced testimony and exhibits from a multi-week jury trial of co-defendants. ROA.246, 249-250, 257-258, 288-

289, 293, 298-299, 302, 319. Mr. Kumapayi did not attend that trial and did not participate in the presentation of evidence. ROA.250, 293.

Neither the admitted trial exhibits nor the full trial transcripts were disclosed to defense counsel before sentencing. ROA.249-250. Nonetheless, the Government and the court relied on those materials to support the scope of the conspiracy and the multi-state loss figures ultimately adopted. ROA.249-250, 288-289, 302, 319.

Rule 32's opportunity-to-comment requirement allows reliance on matters beyond the PSR, but if the court intends to rely on such material, defense counsel must be given an opportunity to address it; otherwise Rule 32's accuracy purpose is defeated. *United States v. Otero*, 868 F.2d 1412, 1414-15 (5th Cir. 1989). Rule 32 does not permit reliance on evidence "which the defendant has had no opportunity to rebut." *Townsend*, 55 F.3d at 172. Here, defense counsel had no access to the underlying trial record, no ability to examine context, no ability to assess evidentiary rulings, and no opportunity to challenge the portions relied upon. The sentencing court nevertheless treated that record as factual support for disputed sentencing enhancements and restitution. That reliance violated both Rule 32 and due process.

### 2. The Government's Loss Proof Rested on Summaries and Agent Testimony That Were Not Subject to Meaningful Testing.

The Government's loss theory rested largely on summary spreadsheets, compilations, and case-agent testimony rather than on the underlying claim records allegedly supporting multi-state totals. ROA.240-249, 321-481. Defense counsel objected that the Government had not produced the underlying documentation necessary to verify the existence of the alleged claims, the methodology used to calculate aggregate totals, whether figures were duplicative, and whether losses were properly attributed to Mr. Kumapayi rather than to co-defendants. ROA.525-536.

Despite those objections, the Government did not introduce the underlying claim records for the states referenced in the PSR. Instead, the district court accepted summary exhibits and agent testimony as sufficient proof. But summaries are not self-proving. Rule 32 requires more than conclusory agent assurances.

### 3. Rule 32 Required Dispute-Resolving Findings; Wholesale Adoption of the PSR/Addendum Was Insufficient.

The original PSR attributed $4,695,609.57 in intended loss and recommended multiple enhancements that materially increased the advisory range. ROA.507-509. The defense filed detailed written objections challenging the loss amount and attribution, vulnerable-victim status, number of victims, foreign conduct, denial of minor-participant reduction, and denial of the zero-point-offender reduction. ROA.525-536. Then probation issued the revised PSR attributing $4,880,453.57 in intended loss to Mr. Kumapayi. ROA.549-551.

Rule 32(i)(3)(B) required the district court to rule on those disputed factual matters or determine that they would not affect sentencing. Instead, the court adopted the PSR and Addendum wholesale without making individualized findings resolving the contested issues. ROA.240-319, 573-576; Fed. R. Crim. P. 32(i)(3)(B).

The court repeatedly overruled objections, incorporated the probation officer's response, and stated that its rulings were supported by a preponderance of the evidence. ROA.300-308. What the court did not do was identify the specific facts it found, explain how disputed matters

were resolved, or tie its determinations to particular evidence in the record. ROA.300-308.

Where a defendant raises substantive, evidence-based objections affecting the advisory range, Rule 32 requires more than generalized adoption of the PSR. The court must make dispute-resolving findings sufficient to permit meaningful appellate review. Simply stating "I adopt probation" does not satisfy Rule 32 when material factual disputes remain unresolved.

#### 4. The PSR's Post-Objection Revisions Compounded the Rule 32 Violation.

After defense counsel filed written objections challenging loss calculation, attribution, and methodology, the probation officer issued an Addendum revising multiple state loss figures. ROA.560-565. The Addendum stated only that the revisions were based on "updated amounts [that] were received from the case agent." ROA.565. It did not identify the specific records supporting the revised figures, disclose the sources of those records, explain the methodology used to calculate or revise the totals, or address how the revised figures were attributable to Mr. Kumapayi. ROA.565. The district court adopted the PSR and Addendum wholesale. ROA.309; *see also* ROA.240-319, 573-576.

Rule 32 permits adoption of a PSR only where the PSR itself resolves the defendant's objections with reliable factual findings. *Carreon*, 11 F.3d at 1231. It does not permit adoption of revised totals whose basis remains unidentified and whose methodology remains unexplained. Post-objection numerical revisions without disclosure of their evidentiary foundation create a moving target, which is precisely what Rule 32 is designed to prevent.

The district court did not identify the evidentiary basis for the revised totals, did not explain why they were reliable, and did not make dispute-resolving findings addressing the defense's objections. ROA.309; *see also* ROA.240-319, 573-576. That failure independently violates Rule 32(i)(3)(B). *See* Fed. R. Crim. P. 32(i)(3)(B).

### C. The Court Failed to Ensure Meaningful Consultation Under Rule 32(i)(1)(A).

Rule 32(i)(1)(A) requires the court to verify that the defendant and counsel have read and discussed the PSR and any addendum. *See* Fed. R. Crim. P. 32(i)(1)(A). This obligation ensures that sentencing is based on an adversarially tested record and that the defendant can meaningfully participate. *United States v. Victoria*, 877 F.2d 338, 340 (5th Cir. 1989).

At the time of sentencing, Mr. Kumapayi was housed out of state in Oklahoma. ROA.539. The Government disclosed hundreds of pages of sentencing materials three days before sentencing. ROA.87-88, 247-248. The Government provided hundreds of additional pages of exhibits minutes before the hearing began. ROA.240-249, 321-481. Then, the sentencing hearing commenced at 9:12 a.m. ROA.242. Defense counsel informed the court that she had not been able to meaningfully review the materials and renewed her request for additional time. ROA.246-249. The court denied the request and proceeded. ROA.248.

The district court did not inquire whether counsel and Mr. Kumapayi had discussed the late-disclosed materials, nor did it make any finding that consultation had been adequate. ROA.240-319. When circumstances indicate consultation may not have been meaningful, the sentencing court should have addressed the issue on the record. That did not occur here.

### D. This Was Fundamental Procedural Error, Not Harmless Irregularity.

These Rule 32 violations were not technical missteps. The undisclosed trial materials, unproduced underlying loss records, post-objection numerical revisions, and lack of meaningful consultation, *inter*

*alia*, all bore directly on the core sentencing determinants: intended loss, guideline enhancements, and restitution. ROA.98-105, 573-576. The district court adopted the revised loss totals and applied the challenged enhancements in calculating the advisory Guidelines range, and it imposed restitution mirroring those same aggregate figures. ROA.98-105, 573-576.

Because the Guidelines range "anchor[s]" the sentencing process, reliance on improperly supported or undisclosed material is rarely harmless. *Molina-Martinez*, 578 U.S. at 194-202. Once a preserved procedural or Guidelines error is shown, the Government bears the burden of demonstrating that the district court would have imposed the same sentence for the same reasons absent the error. *United States v. Ibarra-Luna*, 628 F.3d 712, 718-19 (5th Cir. 2010). That showing cannot be made here. The court adopted the PSR's calculations, did not announce an alternative sentence independent of the Guidelines, and did not indicate that the challenged determinations were immaterial to its reasoning. ROA.573-576.

Nor can the Government show harmlessness where the very evidentiary foundation for the sentencing determinations was

undisclosed, revised without explanation, and never subjected to meaningful adversarial testing. Rule 32's disclosure and dispute-resolution requirements exist precisely to prevent sentencing based on untested assertions. When a court relies on materials the defense had no fair opportunity to review or rebut, the resulting sentence cannot be deemed procedurally sound.

This was not a minor evidentiary disagreement. It was sentencing on an incomplete and unreliably adjudicated record. Under Rule 32 and due process, that is reversible error.

**E. Relief Requested.**

The sentencing determination rests on materials that were never properly disclosed, never reliably adjudicated, and never meaningfully tested through adversarial procedure. That violates Rule 32(i)(1)(A), (C), and (i)(3)(B), which require disclosure, adversarial testing, and dispute-resolving findings. *See* Fed. R. Crim. P. 32; *see Carreon*, 11 F.3d at 1231; *Zuniga*, 720 F.3d at 590-91. It also violates due process, which forbids sentencing based on unreliable or untested information. *Tucker*, 404 U.S. at 447; *Otero*, 868 F.2d at 1414-15.

Accordingly, the sentence and restitution order must be vacated, and the case remanded for resentencing on a fully disclosed and reliably adjudicated record.

## IV. The District Court Procedurally Erred by Applying Multiple Enhancements and Denying Reductions Without Resolving Material Objections or Making Individualized Findings.

### A. Standard of Review.

This Court reviews sentences for procedural reasonableness under an abuse-of-discretion framework. *Gall v. United States*, 552 U.S. 38, 51 (2007). When a defendant preserves an objection, factual findings are reviewed for clear error and legal conclusions *de novo*. *Sanders*, 343 F.3d at 520. A district court must resolve disputed sentencing facts as Rule 32 requires, and the Government bears the burden to show harmlessness. *Ibarra-Luna*, 628 F.3d at 713-714. The court may rely on the PSR only if its factual assertions bear sufficient indicia of reliability; bald or conclusory statements are insufficient. *Zuniga*, 720 F.3d at 590-91.

### B. The District Court Applied Enhancements and Denied Reductions Without Dispute-Resolving Findings.

The objections below present a consistent problem: the district court adopted probation's conspiracy-wide approach and overruled material objections without making the dispute-resolving findings Rule 32 requires. In Objection No. 1, the court attributed intended loss without individualized § 1B1.3 scope-and-foreseeability findings. In Objections Nos. 2 and 3, it applied the vulnerable-victim and ten-or-more-victims

enhancements without identifying defendant-tethered predicates tied to properly attributable loss. In Objection No. 6, it applied the foreign-conduct enhancement without making scope, foreseeability, or "substantial part" findings as to Mr. Kumapayi. And in Objections Nos. 4 and 7, it denied the zero-point-offender and minor-participant reductions without making the independent, criteria-driven and comparator-based findings those provisions require. Objection No. 5 concerns restitution and is addressed separately in Issue V. Because these rulings altered the offense level and the Guidelines range the court adopted, remand is required.

### 1. Objection No. 1: The District Court Misapplied U.S.S.G. § 1B1.3 by Attributing Conspiracy-Wide Intended Loss Without Individualized Scope-and-Foreseeability Findings.

The district court erred by holding Mr. Kumapayi accountable for conspiracy-wide intended loss without making the individualized findings required by U.S.S.G. § 1B1.3(a)(1)(B), which drove the § 2B1.1(b)(1) enhancement. *See* U.S.S.G. § 1B1.3(a)(1)(B); U.S.S.G. § 2B1.1(b)(1). Because Mr. Kumapayi preserved this claim through written objections to the PSR's loss tables and attribution methodology, review of the district court's application of the Guidelines and relevant-conduct

framework is *de novo*, while underlying factual findings (including the loss determination) are reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Harris*, 821 F.3d 589, 601 (5th Cir. 2016). The Government bears the burden to prove sentencing enhancements by a preponderance of relevant and reliable evidence. *United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008). A factual finding is not clearly erroneous if plausible in light of the record as a whole. *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006). Loss is a specific offense characteristic under § 2B1.1(b)(1), defined as the greater of actual or intended loss. *United States v. Isiwele*, 635 F.3d 196, 202 (5th Cir. 2011); U.S.S.G. § 2B1.1 cmt. n.3(A); *see also United States v. Valdez*, 726 F.3d 684, 695-96 (5th Cir. 2013); *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015).

Whether the district court properly applied § 1B1.3 is reviewed *de novo*; factual findings are reviewed for clear error. *United States v. Carreon*, 11 F.3d at 1230. When sentencing a defendant based on jointly undertaken criminal activity, the court must determine: (1) when the defendant joined; (2) the scope of the defendant's agreement; and (3) what conduct within that scope was reasonably foreseeable. *Id.* at 1230-37;

U.S.S.G. § 1B1.3(a)(1)(B). The court may adopt the PSR only if its findings are sufficiently clear to permit meaningful appellate review. *Carreon*, 11 F.3d at 1230; United States v. *Sanders*, 343 F.3d at 527. Before attributing co-conspirator loss, the district court must make individualized findings defining the scope of the defendant's agreement and addressing foreseeability, and it must resolve disputed sentencing facts in compliance with Rule 32(i)(3)(B). *Harris*, 821 F.3d at 601; *Sanders*, 343 F.3d at 527.

**a. The PSR attributed $4.7M/$4.88M as conspiracy-wide totals without tying the bulk of losses to Mr. Kumapayi's jointly undertaken activity.**

The initial PSR attributed $4,695,609.57 in intended loss to Mr. Kumapayi. ROA.507-509. That total included $1,140,000.00 in alleged romance-fraud losses (S.M., J.E., R.D., Z.L.) and $3,555,609.57 in unemployment-insurance ("UI") losses across nine states. ROA.502-504. As to the romance-fraud victims, the PSR attributed $500,000 to S.M., $300,000 to J.E., $300,000 to R.D., and $40,000 to Z.L., yet the only transaction specifically documented as directly tied to Mr. Kumapayi was a $15,000 wire from S.M. ROA.502-504. The PSR did not identify transactions supporting the remaining $485,000 attributed to S.M., did

not identify transaction support for the $300,000 figures attributed to J.E. and R.D., did not connect Mr. Kumapayi to any transaction involving Z.L., and did not make findings that the full $1.14 million was within the scope of Mr. Kumapayi's jointly undertaken criminal activity or reasonably foreseeable to him. ROA.502-504, 525-528. Instead, the PSR aggregated conspiracy-wide victim losses and attributed them wholesale.

The UI subtotal was driven by the PSR ¶35 loss table, which attributed $3,555,609.57 in UI losses, including $3,254,229.00 attributed to California alone. ROA.507. The PSR stated these amounts were "provided and determined by an agent with the OIGDOL," but did not disclose underlying records, did not identify which California or other state claims were within Mr. Kumapayi's jointly undertaken activity, and did not explain the methodology for assigning the $3,254,229.00 California figure (or the multi-state total) to him. ROA.507; *see also* ROA.495-523. The only specific conduct attributed to Mr. Kumapayi consisted of two ATM withdrawals involving a Nevada UI debit card, the $15,000 romance-related wire, and certain text communications. See ROA.502-508. The PSR did not allege that he filed the California claims, controlled the email accounts used to submit those claims, directed multi-

state filings, or exercised decision-making authority over the UI scheme. ROA.495-523.

After the defense objected that the PSR failed to establish scope/foreseeability for the aggregated losses and failed to disclose the methodology behind the agent-supplied totals, ROA.525-528, the Revised PSR increased the UI subtotal to $3,740,453.57 while keeping California fixed at $3,254,229.00 and revising Nevada and Illinois. ROA.549; ROA.560-561. The totals changed; the California anchor did not; and the Revised PSR still supplied no individualized scope-and-foreseeability findings.

#### b. The hearing record confirms the Government could not link Mr. Kumapayi to the California claims that drive the intended loss amount, could not link him to Texas at all, and tied direct UI withdrawals only to some claims in Nevada.

The sentencing testimony underscores the missing § 1B1.3 findings and confirms that the California subtotal, the driver of the UI table, was not supported by individualized evidence as to Mr. Kumapayi's role or agreed-upon scope.

**California (UI Claim of $3,254,229.00).** On cross-examination, Special Agent Angert could not identify who created the key California

email account(s), could not say who accessed those accounts, could not supply IP-address information, and could not say Mr. Kumapayi ever accessed the email account used to file the California claims. ROA.276-277. Critically, Angert admitted he did not believe Mr. Kumapayi withdrew any funds from the California claims, and confirmed that, as to the $3.25 million figure, there were no withdrawals by Mr. Kumapayi. ROA.277-278. Yet the initial and revised PSR attributed the full California subtotal, and thus the bulk of the UI loss, to him. ROA.507, 549.

**Texas (UI Claim of $2,814.00).** Angert further admitted that although Texas was attributed to Mr. Kumapayi, he did not withdraw Texas funds, was not in possession of a Texas card, and the attribution rested on the theory that he was simply "part of the scheme." ROA.280. That is precisely the distinction § 1B1.3 polices: conspiracy membership is not the same as jointly undertaken relevant conduct.

**Nevada (UI Claim of $211,133.89).** Nevada was the only state the PSR and testimony tied to three (3) direct card use and ATM withdrawals by Mr. Kumapayi. *See* ROA.266-268, 505-507, 546-549. That contrast matters, as the record contained individualized proof for a narrow subset

of UI conduct, but the court attributed the entire multi-state totals without defining scope or foreseeability. *See* ROA.266-268, 505-507, 546-549.

**Illinois (UI Claim of $261,205.00).** The PSR referenced Illinois-linked Green Dot cards and deposits, but the record still did not establish claim-filing conduct, direction, withdrawals, or a methodology linking Mr. Kumapayi to the full Illinois subtotal. ROA.274-282, 505-507, 546-549.

**Other States.** The Revised PSR attributed UI losses to Maryland ($4,764.68), New York ($1,763.00), Rhode Island ($899.00), Massachusetts ($3,165.00), and Ohio ($480.00) without identifying claim-level evidence linking Mr. Kumapayi to filings, withdrawals, or communications in those jurisdictions. ROA.549. However, at sentencing, Special Agent Angert did not identify any claim filings, cards, withdrawals, deposits, communications, or other conduct by Mr. Kumapayi tied to those states. See ROA.245-285. The district court made no individualized scope or foreseeability findings as to those states. ROA.300-302.

#### c. Special Agent Atkins' cross-confirmed that the romance-loss totals were driven by victim testimony and general conspiracy theory, not individualized scope-and-foreseeability proof as to Mr. Kumapayi.

Agent Atkins confirmed that the $500,000 attributed to S.M. was based on victim testimony, not transaction-level attribution to Mr. Kumapayi. ROA.292-293. He could not identify documentary proof tying Mr. Kumapayi to J.E.'s and acknowledged no photographic evidence of him handling Z.L.'s package. ROA.293-297. And on the residence issue, which is central to the PSR's "hub" narrative, Agent Atkins would not say Mr. Kumapayi lived at the apartments, stating he could not say with complete confidence that he "laid his head down there every night." ROA.295-296. The record therefore lacked individualized proof that the full romance-loss totals were within the scope of his jointly undertaken activity.

#### d. The district court made the legal error explicit by treating scope as irrelevant and attributing all loss because it was a "criminal enterprise."

At sentencing, after hearing the agents, the district court overruled the objection and adopted probation's response, explaining that because this was a "criminal enterprise," Mr. Kumapayi was "responsible for it

all," and that defense counsel was "misunderstanding of what happens in a conspiracy case." ROA.279, 300-302. That reasoning conflates conspiracy liability with relevant-conduct attribution. Section 1B1.3 does not permit automatic attribution of all conspiracy losses to every participant; it requires particularized findings as to scope and foreseeability. *Sanders*, 343 F.3d at 527; *Carreon*, 11 F.3d at 1230-37. The court's statements confirm it treated the scope inquiry as legally irrelevant, rather than making the findings Rule 32(i)(3)(B) and § 1B1.3 require.

Because the court never defined the scope of Mr. Kumapayi's agreement (particularly as to California UI claims and the bulk romance totals) and never made foreseeability findings tied to that defined scope, its blanket adoption of the PSR's aggregated totals cannot support meaningful appellate review. *Sanders*, 343 F.3d at 527. Remand is required.

#### 2. Objection No. 2: The District Court Erred in Applying the Vulnerable-Victim Enhancement (U.S.S.G. § 3A1.1(b)(1)).

The district court erred in applying the two-level vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1). *See* U.S.S.G. § 3A1.1(b)(1).

The enhancement requires findings that (1) a victim was unusually vulnerable due to age, physical or mental condition, or particular susceptibility to the criminal conduct, and (2) the defendant knew or should have known of that unusual vulnerability. U.S.S.G. § 3A1.1(b)(1) & cmt. n.2. "Unusual" means more susceptible than the typical victim of the offense; age alone is not enough absent a comparative showing. *Id.* And the PSR may support an enhancement only if its factual assertions bear sufficient indicia of reliability; conclusory statements are insufficient. *Zuniga*, 720 F.3d at 590-91.

The Revised PSR applied the enhancement on the ground that Mr. Kumapayi "received direct fraud proceeds from an elderly romance fraud victim" and was responsible for another "elderly romance fraud victim." ROA.552. But it did not identify the victims' specific ages or any individualized vulnerability beyond age (e.g., cognitive impairment, illness, isolation, diminished capacity), and it did not explain how Mr. Kumapayi knew or should have known of any unusual vulnerability. ROA.552, 560-561. Probation's response likewise cited no communications, testimony, or other evidence showing that Mr. Kumapayi knew victim-specific characteristics, particularly given the

Government's theory that his role involved deposits/withdrawals rather than romance communications. ROA.560-561. The sentencing record did not supply what the PSR lacked. Agent Atkins' testimony addressed the conspiracy and money flow and acknowledged that loss figures were based on victim reports, not on proof that Mr. Kumapayi communicated with victims or learned their personal circumstances. ROA.285-300.

The district court overruled the objection by adopting probation's response and stating only that the enhancement applied by a preponderance. ROA.308. That ruling made no findings that any victim was unusually vulnerable, no findings on Mr. Kumapayi's knowledge, and no findings tying any vulnerability-based conduct or knowledge to relevant conduct attributable to him under § 1B1.3. ROA.308, 552; *see also* U.S.S.G. § 1B1.3. Rule 32(i)(3)(B) required dispute-resolving findings on these contested predicates; the court provided none and instead adopted conclusory PSR language. ROA.308, 552; Fed. R. Crim. P. 32(i)(3)(B). Remand is required.

### 3. Objection No. 3: The District Court Erred in Applying the Ten-or-More-Victims Enhancement (U.S.S.G. § 2B1.1(b)(2)(A)).

The district court erred in applying the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A). *See* U.S.S.G. § 2B1.1(b)(2)(A). That provision applies only if the offense involved ten or more "victims," and a "victim" is defined as any person who sustained an actual loss determined under § 2B1.1(b)(1). U.S.S.G. § 2B1.1 cmt. n.1. Because commentary interpreting the Guidelines is authoritative unless inconsistent with the text, only persons whose actual losses are included in the defendant's attributable loss calculation may be counted. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

This enhancement rises and falls with the loss-attribution error. Only victims whose losses are properly attributable under § 1B1.3 may be counted. U.S.S.G. § 2B1.1 cmt. n.1. As shown in Objection No. 1, the court did not make individualized scope and foreseeability findings before adopting the multi-state loss table. ROA.305-306. The court therefore never determined whether ten qualifying victims were attributable to Mr. Kumapayi. That failure independently violates Rule 32(i)(3)(B). Remand is required.

### 4. Objection No. 4: The District Court Erred by Denying the Zero-Point-Offender Reduction (U.S.S.G. § 4C1.1).

The district court erred in denying Mr. Kumapayi the two-level reduction available to zero-point offenders under U.S.S.G. § 4C1.1. *See* U.S.S.G. § 4C1.1. Section 4C1.1 provides a two-level decrease for a defendant who receives zero criminal-history points and satisfies the enumerated criteria in subsection (a). The provision is criteria-driven: if the listed conditions are met, the reduction applies.

It is undisputed that Mr. Kumapayi had zero criminal-history points and was placed in Criminal History Category I. ROA.553. The record contains no allegation that he used violence, possessed a firearm, caused bodily injury, engaged in a continuing criminal enterprise, or received an aggravating-role adjustment. ROA.537-571. The PSR denied the reduction solely because it applied the vulnerable-victim enhancement under § 3A1.1. ROA.308, 552; U.S.S.G. § 3A1.1. The district court adopted that conclusion without identifying any other disqualifying criterion.

The denial was therefore entirely derivative of the vulnerable-victim enhancement. As explained in Objection No. 2, that enhancement

was applied without individualized findings of unusual vulnerability, knowledge, or relevant-conduct attribution. If § 3A1.1 cannot stand, there is no remaining basis to deny § 4C1.1. The district court made no independent findings that Mr. Kumapayi failed any other enumerated requirement, as Rule 32(i)(3)(B) requires when eligibility is disputed. ROA.308. Because § 4C1.1 operates mechanically once its criteria are satisfied, remand is required.

**5. Objection No. 5: The District Court Clearly Erred in Entering a Restitution Order in the Amount of $4,880,453.57 (18 U.S.C. § 3663A and 18 U.S.C. § 3664).**

The restitution objection is preserved but addressed separately in Issue V, which challenges the legality of the restitution order under 18 U.S.C. § 3663A and 18 U.S.C. § 3664.

**6. Objection No. 6: The District Court Clearly Erred in Applying the Foreign-Conduct Enhancement (U.S.S.G. § 2B1.1(b)(10)(B)).**

The district court erred in applying the two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(B), which applies if "a substantial part of a fraudulent scheme was committed from outside the United States." *See* U.S.S.G. § 2B1.1(b)(10)(B). Interpretation is reviewed *de novo* and factual findings for clear error. *United States v. Ocana*, 204 F.3d 585, 588-89 (5th

Cir. 2000). As with the loss issues (Objection No. 1), Chapter Two enhancements remain governed by § 1B1.3 relevant-conduct limits; the enhancement may be applied only to foreign conduct attributable to this defendant through the required scope/foreseeability analysis.

The PSR applied § 2B1.1(b)(10)(B) because co-defendants sent money overseas and some romance-fraud communicators were located in Nigeria. ROA.552. But it did not identify any act Mr. Kumapayi personally committed from outside the United States, any evidence he was abroad during the offense, any proof he directed foreign-based actors, or any finding that foreign operations were within the scope of his jointly undertaken activity. ROA.552; *see also* ROA.537-571. Mr. Kumapayi objected that the PSR failed to tie any foreign component to him under § 1B1.3. ROA.533-534.

Probation and the court treated the enhancement as effectively automatic because it is "offense-specific," stating it was not "Defendant-specific" and adopting the addendum response. ROA.306, 564. That framing is the legal error: "offense-specific" does not dispense with § 1B1.3 attribution or the need to determine whether a substantial part of the scheme attributable to this defendant was committed from abroad.

The hearing did not supply what the PSR lacked. The Government relied primarily on co-defendant Iribhogbe's international activity (travel abroad and a "UAE" WhatsApp handle), but identified no foreign act by Mr. Kumapayi and no evidence that foreign-based operations constituted a substantial portion of his attributable conduct. ROA.305-306.

On this record, the conduct attributed to Mr. Kumapayi, which included deposits and debit-card activity, occurred in the United States. ROA.240-320. The district court made no finding defining "substantial part" or quantifying any foreign component of his attributable scheme. ROA.306. Without those defendant-tethered findings, the § 2B1.1(b)(10)(B) enhancement cannot stand, and remand is required.

#### 7. Objection No. 7: The District Court Erred by Denying the Minor-Participant Reduction (U.S.S.G. § 3B1.2(b)).

The district court erred in denying Mr. Kumapayi a two-level mitigating-role reduction under U.S.S.G. § 3B1.2(b). *See* U.S.S.G. § 3B1.2(b). A defendant qualifies if he is less culpable than most other participants in the criminal activity. The inquiry is comparative and requires evaluation against the "average participant" in the scheme. *United States v. Gomez-Valle*, 828 F.3d 324, 327-29 (5th Cir. 2016).

Amendment 794 further clarifies that performing an essential or recurring function does not preclude the reduction; the dispositive question is whether the defendant was substantially less culpable than the average participant. U.S.S.G. § 3B1.2 cmt. n.3(C). Failure to apply this comparative framework constitutes reversible error. *Gomez-Valle*, 828 F.3d at 328-29.

The record demonstrates a clear hierarchy. Edgal Iribhogbe directed international operations, controlled communications with overseas actors, and coordinated transactions. ROA.249, 255, 263-265, 305. Sandra Popnen functioned as a domestic intermediary relaying instructions and directing certain financial activity. ROA.255, 263-265, 285, 305. By contrast, the evidence showed that Mr. Kumapayi performed operational tasks, primarily ATM withdrawals and deposits, after receiving instructions. ROA.264, 285, 275-300. Agent Angert testified that he "just received direction and followed instructions." ROA.285. There was no evidence he organized the scheme, exercised supervisory authority, selected victims, directed fund distribution, or controlled foreign communications. ROA.240-320.

Despite this disparity, the district court denied the reduction with the conclusory statement that there was no evidence he was less culpable than the "average participant." ROA.306-307. The court did not identify the comparator group, did not compare his role to Iribhogbe or Popnen, and did not apply the factors listed in Application Note 3(C). Instead, the denial appears to rest on the fact that he repeatedly performed withdrawals and deposits. But recurring participation does not equate to leadership or equal culpability. *See Gomez-Valle*, 828 F.3d at 328-29. By equating active participation with average culpability, without identifying the relevant comparator or conducting the required comparative analysis, the district court misapplied § 3B1.2. Remand is required.

### C. These Errors Were Not Harmless.

The Government cannot carry its burden to show harmlessness. A sentence is procedurally unreasonable if the district court improperly calculates the Guidelines range or fails to resolve disputed sentencing facts. *Gall*, 552 U.S. at 51. Once a preserved Guidelines or procedural error is shown, the Government must "convincingly demonstrate" both that the district court would have imposed the same sentence absent the

error and that it would have done so for the same reasons. *Ibarra-Luna*, 628 F.3d at 718-19. That burden cannot be met here.

### 1. The Guidelines Range Anchored the Sentence.

The Supreme Court has recognized that the advisory Guidelines range "anchor[s]" the sentencing process, and reliance on an erroneously calculated range ordinarily establishes a reasonable probability of a different outcome. *Molina-Martinez*, 578 U.S. at 194-202. Here, the district court adopted the PSR's offense level and advisory range and sentenced within that framework, without announcing an alternative sentence independent of the Guidelines. Nothing in the record indicates that the court would have imposed the same sentence for the same reasons under a correctly calculated range.

### 2. The Challenged Rulings Directly Affected the Offense Level.

The errors were not abstract. The loss calculation, victim-count enhancement, vulnerable-victim enhancement, foreign-conduct enhancement, denial of the zero-point-offender reduction, and denial of the minor-participant reduction each affected the offense level the court adopted. Several were expressly derivative of others. For example, the victim-count enhancement depended on which losses were properly

attributable under § 2B1.1(b)(1), and the zero-point-offender reduction was denied solely because the vulnerable-victim enhancement was applied. ROA.308, 552. Because these rulings shaped the advisory range itself, the Government cannot show they had no effect on the sentence. *Molina-Martinez*, 578 U.S. at 194-202; *Ibarra-Luna*, 628 F.3d at 718-19.

#### 3. The Rule 32 Failures Independently Defeat Harmlessness.

Harmlessness is particularly unavailable where the district court adopted conclusory PSR assertions without resolving disputed factual predicates. Rule 32(i)(3)(B) required dispute-resolving findings. The court instead relied on generalized, conspiracy-wide conclusions without making individualized findings tethered to reliable evidence. ROA.305-308, 560-561. A PSR may support an enhancement only if its assertions bear sufficient indicia of reliability; "bald" or conclusory statements do not suffice. *Zuniga*, 720 F.3d at 590-91. Where the factual bases for multiple enhancements and denials were not properly resolved, the Government cannot convincingly demonstrate that the same sentence would have been imposed for the same reasons under a correctly calculated and reliably supported Guidelines range. *Ibarra-Luna*, 628 F.3d at 718-19.

#### 4. The Errors Were Compounding, Not Isolated.

These rulings were not independent. The court repeatedly substituted conspiracy-wide aggregation for individualized relevant-conduct and comparative findings. That compounding approach materially elevated the advisory range and increased the likelihood that the sentence was driven by an unreliable Guidelines anchor. *Gall*, 552 U.S. at 51; *Molina-Martinez*, 578 U.S. at 194-202. The court never announced an alternative sentence, and it explicitly adopted the PSR range, so the range "anchored" the sentence in the *Molina-Martinez* sense. In turn, the Government cannot satisfy its burden under *Ibarra-Luna* as to any single ruling or their cumulative effect.

### D. Requested Relief.

Because the district court failed to resolve material objections, failed to make individualized relevant-conduct findings, and applied multiple enhancements without dispute-resolving analysis, the sentence was procedurally defective. This Court should vacate the sentence and remand for resentencing with full compliance with Rule 32 and the individualized requirements of the Sentencing Guidelines.

## V. The Restitution Order Violates the Mandatory Victims Restitution Act and 18 U.S.C. § 3664.

### A. Standard of Review.

This Court reviews *de novo* whether an appellate waiver bars review. *United States v. Lucas*, 134 F.4th 810, 815 (5th Cir. 2025). If the claim is not barred, the Court reviews *de novo* the legality of a restitution order under the Mandatory Victims Restitution Act ("MVRA"), including whether the district court exceeded its statutory authority under 18 U.S.C. § 3663A and the governing legal framework for restitution. *Id.*; *United States v. Sharma*, 703 F.3d 318, 323-24 (5th Cir. 2012); *see also United States v. King*, 93 F.4th 845, 850 (5th Cir. 2024). The amount (quantum) of restitution is reviewed for abuse of discretion, and the district court's factual findings supporting restitution are reviewed for clear error (or plain error if not preserved). *Lucas*, 134 F.4th at 815; *Sharma*, 703 F.3d at 323; *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006); *United States v. Mathew*, 916 F.3d 510, 515 (5th Cir. 2019); *United States v. Kasali*, 111 F.4th 637, 648 (5th Cir. 2024).

The Government bears the burden of proving, by a preponderance of the evidence, the amount of actual loss sustained by each victim. 18 U.S.C. § 3664(e); *Beydoun*, 469 F.3d at 107. Restitution may not exceed

the victim's actual loss, and a restitution award that includes losses not permitted by the MVRA is unlawful and must be vacated. *Sharma*, 703 F.3d at 323-24. Every dollar must be supported by record evidence. *United States v. Schinnell*, 80 F.3d 1064, 1070 (5th Cir. 1996).

### B. The MVRA Requires Victim-Specific Proof of Actual Loss and Proximate Cause.

The MVRA authorizes restitution only for a victim "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). A defendant is responsible only for restitution arising from the conduct underlying the offense of conviction. *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).

Even where the offense of conviction includes a "scheme" or conspiracy, restitution remains limited to losses caused by conduct within the scope of the charged offense. *Id.*; *United States v. Mason*, 722 F.3d 691, 701-703 (5th Cir. 2013). Restitution cannot sweep in losses from transactions beyond the indictment's temporal and factual scope. *Mason*, 722 F.3d at 701-703.

Critically, restitution under the MVRA is not coextensive with Guidelines loss. The Sentencing Guidelines permit consideration of broad "relevant conduct." The MVRA does not. Restitution is a statutory

remedy limited to identifiable victims, actual pecuniary loss, direct and proximate causation, and losses proven by a preponderance of reliable evidence. 18 U.S.C. §§ 3663A(a)(2), 3664(e); *Sharma*, 703 F.3d at 323-324.

In conspiracy cases, restitution may include reasonably foreseeable losses caused by jointly undertaken criminal activity, but only if those losses fall within the scope of the defendant's agreement and were directly and proximately caused by that conduct. *United States v. Wright*, 496 F.3d 371, 381-82 (5th Cir. 2007). Conspiracy membership does not automatically render a defendant liable for the entire conspiracy-wide loss absent findings establishing scope and foreseeability.

### C. The District Court Imposed Aggregate, Conspiracy-Wide Restitution Without Victim-Specific Findings.

Here, the court-imposed restitution in the same aggregate amount reflected in the PSR's multistate loss calculations. ROA.103, 316, 550, 558, 566. The court did not make individualized causation findings, specifically whether each loss was directly and proximately caused by Mr. Kumapayi's conduct, whether the losses fell within the scope of his jointly undertaken criminal activity, or whether they were reasonably

foreseeable. Instead, restitution effectively tracked the conspiracy-wide loss figure used for Guidelines purposes in the PSR. ROA.573-576.

That approach conflicts with this Court's controlling authority. In *Mason*, this Court vacated restitution where the district court included losses from transactions outside the offense of conviction, emphasizing that restitution must track the charged conduct, not the broader narrative of a conspiracy. 722 F.3d at 701-703. Likewise, in *Inman*, the Court held that restitution must be limited to the conduct underlying the offense of conviction. 411 F.3d at 595.

Restitution cannot simply mirror the PSR's aggregate conspiracy total. It must be grounded in victim-specific proof and statutory findings. 18 U.S.C. § 3664; *Beydoun*, 469 F.3d at 107.

### D. The Government Failed to Carry Its Burden Under § 3664(e).

The Government bears the burden of proving the amount of actual loss to each victim by a preponderance of the evidence. 18 U.S.C. § 3664(e). That burden is not satisfied by conclusory PSR assertions or summary loss spreadsheets lacking individualized evidentiary support. *See United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008).

Where a defendant objects, the district court must ensure that restitution is supported by reliable evidence tying specific losses to the offense of conviction. Restitution cannot rest on generalized conspiracy totals or undifferentiated multi-participant estimates. *Sharma*, 703 F.3d at 323-324; *Beydoun*, 469 F.3d at 107.

Here, the record does not demonstrate that the Government established, through reliable and victim-specific proof, the amount of actual loss directly and proximately caused by Mr. Kumapayi's conduct. ROA.245-300, 316. Without such proof, the restitution award exceeds the MVRA's statutory bounds. The record contains no victim-specific documentation establishing the amount of actual loss attributable to Mr. Kumapayi. *See* ROA.245-300, 316, 502-508, 516-518, 544-550, 558, 560-564, 566.

### E. The District Court Failed to Make the Findings Required by § 3664 and Rule 32.

Section 3664 requires the district court to resolve disputed restitution issues and determine the amount of loss sustained by each victim. 18 U.S.C. § 3664; Fed. R. Crim. P. 32(i)(3)(B) similarly requires the court to rule on disputed matters affecting sentencing.

Despite defense objections to the restitution calculation, ROA.410-415, the court adopted the PSR's aggregate figure without resolving disputed causation, foreseeability, and scope issues as required by § 3664 and Rule 32. ROA.316, 573-576. Adopting aggregate figures without statutory findings does not satisfy § 3664. Where restitution exceeds what the record supports, the error is not harmless. *Sharma*, 703 F.3d at 323-24.

**F. The Appellate Waiver Does Not Bar Review.**

Although appeal waivers are generally enforceable, they do not foreclose review of a claim that the district court lacked statutory authority to impose restitution. *Lucas*, 134 F.4th at 816-17; *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021). *Lucas* draws the controlling line that under the MVRA, a waiver may bar disputes about "arithmetic" or calculation within authorized bounds, but it does not bar a challenge that the court had no authority to award restitution in the first place, including where the payee is not a proper MVRA "victim" or where the loss is not tied to the offense of conviction through the required scheme/causation nexus. *Lucas*, 134 F.4th at 816-18 (distinguishing authority challenges from calculation challenges). Because this appeal

challenges the district court's statutory authority under the MVRA, not merely the court's loss arithmetic, the waiver does not bar review.

### G. Requested Relief.

The restitution order should be vacated. On remand, restitution may be imposed only if the Government proves, through disclosed and reliable evidence, the actual losses of specifically identified victims directly and proximately caused by Mr. Kumapayi's conduct.

# CONCLUSION

The sentence and restitution order should be vacated and the case remanded for resentencing. The appellate waiver does not bar review. The Rule 11 colloquy did not ensure an informed waiver, and enforcement would insulate a procedurally defective sentencing proceeding. On the merits, Mr. Kumapayi was sentenced on a record that was not fully disclosed, not reliably adjudicated, and not resolved through the dispute-resolving findings Rule 32 requires. Individually and cumulatively, these errors rendered the sentencing proceeding unlawful and unreliable. Therefore, the Court should vacate the sentence and restitution order and remand for resentencing on a complete and properly adjudicated record.

Respectfully submitted,

/s/ Kambira Jones Morgan
Kambira Jones Morgan
The Jones Legal Defense Group, PLLC
2201 Main Street, Suite 800
Dallas, TX 75201
Telephone: (972) 525-7416
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I certify that on March 16, 2026, a true and correct copy of the foregoing Proposed Sufficient Brief was served electronically via the Court's CM/ECF system on all counsel of record.

/s/ Kambira Jones Morgan
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1, this document contains **10,852** words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook in a proportionally spaced typeface in 14-point size and 12-point size for footnotes.

/s/ Kambira Jones Morgan
*Counsel for Appellant*